Eugene H. Timanus, Receiver for Spencer Corporation v. Commissioner. *
Eugene H. Timanus, Receiver for Spencer Corp. v. Commissioner
Docket No. 440 P.T.
United States Tax Court
1947 Tax Ct. Memo LEXIS 302; 6 T.C.M. (CCH) 148; T.C.M. (RIA) 47049; February 19, 1947
Geo. E. H. Goodner, Esq., and Scott P. Crampton, Esq., for the petitioner. Lloyd C. Hooks, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: After appeal based upon our opinion of November 28, 1945 [, *303 Dec. 14,885(M)], this case was, on July 24, 1946 [, reversed by the United States Circuit Court of Appeals, Fourth Circuit, and remanded to this Court for further proceedings in accordance with the opinion and judgment of the Circuit Court of Appeals. Concluding from such opinion that the cause was remanded for further consideration so that all costs of the business and all available figures may be taken into account in reaching a determination, we, in pursuance of and in obedience to mandate, set the matter for hearing, and oral arguments have been heard and briefs received. After careful consideration of the opinion of the Circuit Court of Appeals, the mandate and all of the facts of record before us, and the argument of counsel, and upon reconsideration of the case under the mandate, we conclude as follows: The Court is not satisfied, from the facts proven, all of which have heretofore been and are now again considered and weighed, that the petitioner has shown that it bore the burden of the processing tax, within the intendment of section 902 of the Revenue Act of 1936. Considering the length and complexity of the evidence of record, it *304 is considered impracticable to set forth in detail all of the reasons which from the facts of record impel us to the above conclusion, but such reasons include, though they are not limited to, the following: The Court is not satisfied that the seven months period, the first seven months of 1933, is a satisfactory basis of comparison with the taxable period. We have found that in the early part of 1933 the textile industry was depressed, and that after March 1933 it became apparent that legislation would be enacted which would affect both textile industry and cotton producer; that it contemplated imposition of a processing tax, an increase of wages, and a curtailment of cotton production, and that it was generally recognized by the industry, and cotton purchasers, that such legislation would result in increase of cost of cotton goods; that consequently demand for, and sales of cotton goods increased greatly through April-July; and that the enactment of the legislation on July 17, 1933, resulted after the effective date in increased labor costs. Obviously there was a change in situation in the textile industry at approximately the end of the seven months period and the beginning of *305 the taxable period The increase in demand for and sales of cotton goods through April to July 1933 is seen as the rational result of the expectation of increase in prices of labor and cotton goods, and the situation is not shown in the record before us to have continued the same throughout the taxable period. We are impelled to find, and do find, on the record here, that the expectation of legislation, and increase of demand and sales, diminished the significance of comparison of losses in the basic period and the taxable period. A period of eager buying, prior to expected rise in prices, can not but be seen as tending toward less losses than in a later period, after the legislation has taken effect. We can only conjecture what the petitioner's losses might have been, in the seven months period, had conditions been the same both before and after August 1, 1933. The whole tendency of the law is to discover comparative periods which are fairly comparable. Here the evidence before us discloses the opposite. Had the situation, prior to August 1, 1933, been the same as thereafter, logic dictates that there would have been no such spread in the amount of losses as petitioner urges it has *306 shown - as its sole reason that it absorbed the tax. Again, only assuming for this purpose, and not finding, that the losses on processed cotton were in the amounts contended by the petitioner, we regard mere proof of a loss greater than the processing tax as unconvincing and unsatisfactory proof of absorption of the tax. It is to be remembered that the petitioner specifically "assumed the burden of proof," (though of course the burden was petitioner's anyway), as stated in its brief, of proving "the actual extent to which the claimant shifted to others the burden of the processing tax," under section 902(e) of the Revenue Act of 1936. What then is the actual extent to which it did not shift, but absorbed the tax? Petitioner's whole argument is that proof of a loss, greater than the tax, demonstrates such absorption. The unsoundness of such view, in our opinion, is clear and is shown by a simple example: Suppose absolute and uncontradicted proof or admission that the tax was passed on to the buyer and collected from him; yet, suppose also an operating loss of a greater amount, say 6 per cent. Under the theory petitioner urges, the processor just supposed had as an "economic" matter *307 absorbed the tax, despite its actual collection from the buyer. That such theory is error is tacitly admitted by the petitioner here, when it moved to subtract from its claim $8,668.98 processing tax actually shown billed to the buyer. In other words, the petitioner weakens and agrees in effect that, to the extent of actual passing on of tax to buyer, proof of operating loss is after all insufficient. But, unable to establish any presumption by margins, the petitioner agreed that it was its burden, as it was, to show the "actual extent" of the tax shift. This to us means that the claimant must show that it actually did absorb the tax - and that, being without benefit of marginal presumption it can not set up a substitute presumption - that operating loss establishes absorption of tax. Under , and , there is failure to show absorption of tax where the sales price is increased sufficient to absorb it, and no satisfactory showing that the loss was due to increased costs other than the tax. Moreover, in , *308 rehearing denied, May 28, 1946; certiorari denied, December 9, 1946, the court (referring to the processing tax) says: * * * The fact that the taxpayer included it in costs, which it endeavored to recover in its prices, creates an inference that the tax was shifted. (CCA-6), cert. denied, . The taxpayer did not satisfactorily rebut this inference. Thus we see that the petitioner, in urging that proof of loss demonstrates that the processing tax was absorbed, is merely, and erroneously, urging that an inference from loss should override the other from inclusion in costs. The burden can not thus be shifted to the Commissioner. Without evidence to meet the statutory presumption arising in respondent's favor, the petitioner can not be sustained. ; ; reversed on other grounds, . The record before us altogether fails to demonstrate the actual extent of absorption of tax by the petitioner; yet, that is the burden set by statute and recognized by the petitioner. The statute does *309 not say "extent presumed because of loss." The only presumption set up lay in margins. Yet, here we see the petitioner, in fact, relying on a presumption - of absorption of tax because of loss - when it is incontrovertible that such loss may occur along with "actual" shifting of tax. In , we read: "The permissible, and we think the true, construction of section 907(e) is that the words 'actual extent' are used in contradistinction to the presumed extent, * * *." We have no doubt that it was never Congressional intent that the government omit collection of processing taxes paid, but actually collected by the taxpayer from buyers merely because, despite such collection, the taxpayer operated at a loss. Cases indicating our view have already been set forth in our original opinion. Cases such as ; , and Tennessee, involving section 501, Revenue Act of 1936, the unjust enrichment statute, are not applicable not only because *310 based specifically upon evidence that the tax was not shifted, but also because section 501(a) specifically takes into consideration the taxpayer's net income, and proof of a loss would therefore appear pertinent; but section 907, here involved, contains no such provision. The decisions in , and , were essentially based upon facts absent from the proof herein, the Regensburg case involving affirmative proof that margin spread was due to factors other than the processing tax, and the Cornett-Lewis case containing evidence that no price changes were made to reflect the tax, and that there was no separate billing thereof to buyers; also evidence of decrease in price in the tax period. Moreover, the distinction in this respect between a case involving comparison of the statutory margins, and one where, as here, that element does not enter and the question is one of actual bearing of the tax burden is suggested in , as follows: As we have pointed out, proof of a net operating loss during the tax period *311 has no probative force to establish that the economic burden of the tax actually was borne by the taxpayer. Whether or not such loss has significance with respect to invoking the statutory presumption in favor of the claimant depends upon a comparison of the average margin per unit during the tax period with the period before and after the tax. * * * Moreover, the petitioner in its contention that it had absorbed the processing tax, submitted on brief, for the first time, a table, thereby arriving at an operating loss for the taxable period (by including the processing tax of $105,267.53 as a cost) of $.0735034 per pound of products processed other than all-rayon, and an operating loss of $.0024244 for the seven months' period. The figures shown thereon were not, except as below set forth, those found by us, but apparently, in attempting to set forth fully the petitioner's position in our opinion, we did not properly explain that many of the figures were not accepted or relied on by us. The petitioner's table, set forth on page 15 of our opinion, was not as a table introduced in evidence, and our findings, shown in similar form on page 7 of our opinion, show that we found only the *312 figures appearing in the first two columns of petitioner's table (except the computation of $.0024244 operating loss per pound, the operating loss of $3,924.62 and the $105,267.53 processing tax shown in column one of petitioner's table. We had, of course, elsewhere found that amount of tax paid, and the $3,924.62 and $.0024244 follow mathematically from the figures found by us, appearing on page 7; and some other facts entering into petitioner's tabled calculations had been found). Though, for the purpose only of discussing one aspect of the matters considered by us, we assumed, arguendo, that the sales of all products, except allrayon, were correctly shown in the petitioner's table, and that manufacturing expenses were "according to taxpayer's figures," we did not and can not accept as satisfactory or reliable the taxpayer's figures, other than those already found by us. The petitioner's figures consist, in the main, of allocating, in the third and fourth columns, the figures in the second column, and (except as above stated) found by us on page 7. In short, the third and fourth columns attempt to separate the "all products" of column two, as between all-rayon and "all products other *313 than all-rayon." Our reasons for not finding nor accepting the figures suggested in the petitioner's brief in the above table, are in effect: The "operating loss per pound" as computed by petitioner is based in part on figures applicable to sales and in part to material consumed or processed, viz., the first item "Sales" represents the total amount received by petitioner for all products sold, whereas the second item "Cost of Cotton" represents the cost of cotton consumed in the period. It does not represent the cost of cotton consumed in making the products sold, the prices of which are included in "Sales." The manufacturing and overhead expenses and selling expenses were taken from the books of petitioner. The first two probably are applicable to articles processed during the period, whereas the selling expenses are applicable to sales. Hence the "operating loss per pound" does not correctly reflect the operating loss per pound of cotton processed or per pound sold. Taxpayer's office manager, the only witness who testified relative to the manufacture and sale of all-rayon cloth, stated that he had no independent recollection on the subject. Upon the request of taxpayer's counsel *314 he was permitted to examine available records, to refresh his recollection. From the ledgers he was able to determine the amount of rayon used or consumed during each of the calendar years 1931 to 1935, inclusive, but there were no records available which disclosed the quantity in pounds, yards, or dollars of all-rayon cloth manufactured or sold in either period, except for the year 1934. Invoices for the year 1934 were available and these disclosed the yards and pounds and sale price of the all-rayon cloth sold during 1934. The invoices for 1933 were not available. Under the circumstances, little, if any, credence can be given to the reply of the office manager: "Nothing but two small samples" to the broad and all-inclusive question of taxpayer's counsel: "Was any all-rayon cloth manufactured and sold in 1933?" It was apparently on this testimony that no adjustments were made by the petitioner's figures in the seven months' period. Petitioner's adjustments for the tax period were made on the assumption that no all-rayon cloth was manufactured and sold in the last five months of 1933, a part of the tax period. The amount in pounds, yards and dollars of all-rayon cloth sold in 1934 *315 was determined from the 1934 invoices. The total sale price of all-rayon cloth, as shown by the 1934 invoices, was $35,686.44. Obviously, they did not disclose the amount of all-rayon cloth manufactured during 1934. As to the first two months of 1935, also a part of the tax period, the testimony is that 4,134 pounds of rayon were used in that period. From the records available it could not be determined what portion of the 4,134 pounds was used in all-rayon cloth. It was therefore assumed by taxpayer that all of the 4,134 pounds were used in the manufacture of all-rayon cloth. The accountant who made the adjustments determined the sales value of the all-rayon cloth by converting the 4,134 pounds into yards by multiplying that amount by 4.3, purportedly the average yards of cloth per pound of rayon sold in that period, and by multiplying the product thus obtained (17,243 [17,776 yards appears to be correct]) by 40", stated to be the sale price per yard of all-rayon cloth in that period, and thus arrived at a sale value of the all-rayon cloth assumed to have been manufactured in the first two months of 1935 of $6,897.20. (The average per yard was in fact about 27".) By this method *316 the accountant determined that the total sales or sale value of all-rayon cloth in the tax period amounted to $42,583.64 ($35,686.44 plus $6,897.20). Petitioner's office manager testified that 40" was practically the highest sale price of rayon cloth in that period. By using the highest price sales obtainable, the amount of sales of all products other than all-rayon were considerably reduced, thus increasing the loss in the tax period. To determine the amount of rayon consumed in the tax period in the manufacture of combination cotton and rayon cloth, which amount was treated as an operating expense, the accountant first converted the 30,704 pounds of rayon cloth sold in 1934 as shown by the 1934 invoices into pounds of rayon by using a conversion factor of 97 per cent. He then multiplied the quotient obtained by 31,653 pounds by 83.36", the average cost per pound of all rayon purchased in 1934, including opening inventory as of January 1, 1934, thus arriving at a cost of $26,385.94. He then determined that the cost of the 4,134 pounds of rayon consumed in the first two months of 1935 was $4,134. The $1 a pound cost was obtained by him from some letter received by taxpayer from the *317 Bureau of Internal Revenue not in evidence. It was stipulated that the cost of rayon consumed in 1934 was $58,262.01. The accountant deducted the total of $26,385.94 and $4,134, or $30,519.94, from $58,262.01 and determined that the remainder, or $27,742.07, represented the cost of the rayon consumed in the manufacture of combination cotton and rayon cloth. Thus it appears that, by such calculations, we have been furnished with neither pounds, yards, or sale value of all-rayon cloth processed during the tax period, and the computations of all-rayon cloth sold can not be said to be even reasonably safe approximations - and of course sales for a given period do not measure processing for the same period, in the absence of other evidence. The same methods were in the main used to produce the division of manufacturing expenses, selling and overhead expense, and are equally unconvincing. On brief, requesting findings, as above seen not made by us, petitioner explains its division of the total $758,658.38 manufacturing expense into $10,621.22 and $748,037.16 by using the computation above referred to, to arrive at the pounds of rayon consumed in 1934, and thus a total rayon poundage in *318 the tax period of 69,067, adding that to the 2,485,629 poundage of products other than all-rayon, arriving at 2,554,736, and then ascribing 2,485,629/2,554,736ths, or 98.6 per cent of $748,037.16 to products other than all-rayon, and the balance, $10,621.22, to all-rayon. Likewise, to divide the $118,963.47 total selling and overhead expenses for the taxable period as between all-rayon and other, the petitioner (utilizing its calculation above to arrive at $42,583.64 for sales of all-rayon, and $1,174,428.17 for products other than all-rayon) merely allocates the $118,963.47 on the proportion of $42,583.64 to $1,174,428.17, assuming cost of sale of all-rayon and other products to be the same. By such calculation, cost of selling and overhead is divided $4,163.72 to all rayon, and $114,799.75 to other products. We consider the assumptions, inferences, and computations necessary to arrive at the petitioner's figures unreliable and largely unfounded in evidence, and insufficient upon which to arrive at a computation of the tax upon the cotton processed. Though 613,128 pounds of rayon were purchased between August 1, 1931, and December 31, 1932, and inventories from the latter date to *319 June 3, 1933, only a short-time before the beginning of the taxable period on August 1, 1933, show "stock in process" to be from $27,128.56 to $37,912.88, there appears no elimination from sales, of the rayon which may have been in one form or another, on hand at the beginning of the taxable period. On all of the evidence, we were unable to make the division or find the facts requested by the petitioner, except as above referred to and as set forth in our findings. It has been repeatedly held that the opinion of an expert necessarily made upon, in part at least, surmise and conjectures will not stand against proof of actual fact. . The same case quotes , where it says: "For certainly, on this record it would be but conjecture and surmise to say that the tax burden was shifted, * * *." The figures and calculations proffered by the petitioner's table herein contain too much of surmise and conjecture to be relied on by us, and in our view to uphold claim of absorption of the tax would be not only conjecture and surmise, but also contrary to *320 the effort of the petitioner to shift the tax, and without evidence that it did not do so. The Franklin Peanut case, supra, citing cases, holds that, "A very heavy burden of proof is cast upon the taxpayer seeking refund of processing taxes." To hold for the petitioner here, in our opinion, would be to violate that rule, and indeed to shift the burden to the respondent. This opinion being upon reconsideration pursuant to remand for further consideration, it seems appropriate and necessary to reconsider here and explain, a specific point commented upon by the Appellate Court, and having to do with the taxpayer's computation hereinabove just discussed. We had pointed out that, assuming, arguendo, that the operating loss statements correctly showed dollar sales of other than all-rayon cloth, the average sales price in the taxable period had advanced, over that of the seven months' period, by 19.77145" per pound of cotton processed, that the taxpayer apparently assumed the entire increase to be to recover costs other than the tax, that the only evidence as to cost increase, other than tax, which was considered in computing costs for quoting prices, was the increase in labor costs, that *321 according to the taxpayer's figures, manufacturing expenses increased 14.42593", and that if this increase was entirely due to the labor cost increase, there still remained out of the $.1977145 price increase $.0534552 above the increase in manufacturing cost; which we said was more than sufficient to cover the tax. This, the Appellate Court stated, was incomplete calculation, failing to take into account increased cost of raw material, selling and overhead in the tax period; and that, taking all operating costs into account in the tax period, the taxpayer lost 3.15" per pound of cotton processed, or 7.35", if the 4.2" tax is added. In reconsidering this matter, we should first better state the meaning of our opinion in the above regard. First, for the reasons set forth above, we did not accept as fact the petitioner's figures, as shown by the fact that we had not found many of them, they being based upon calculations and inferences in our view not borne out by the record. We merely assumed them, for only the particular purpose stated. Second, our view, as attempted to be stated, though apparently not well expressed, did not fail to take into account increased cost of raw materials, *322 selling and overhead. Our view was, and upon reconsideration is, that the petitioner, in attempting to demonstrate that the 4.2" processing tax paid by it had not been collected from customers, adduced proof of an advance in the tax period in both prices received and costs paid; that the advance in price was 19.77145" per pound; that the only evidence on increased costs (except tax) being taken into consideration in computing cost on which price was quoted, was on increased labor cost; that according to the petitioner's figures cost of manufacturing increased 14.42593"; that if we assume that such increase was due solely to the increase in labor (which increase in labor cost was shown to have entered into calculation of sales prices), there was left a gap of 5.34552" between proven increased costs considered in setting prices, and the 19.77145" actual increase in price; that this gap might have been filled, in part, by the 4.2" tax, that is, in securing the 19" sales price the petitioner may have collected the tax paid, or, on the other hand, the gap might have been filled by other expenses, such as raw materials, overhead, or selling costs, so that such other expenses, and not the *323 tax, were collected in the sales price; that not only is the evidence clear that the petitioner attempted to pass the tax on to the buyer, by including it in the price, which increased by 19.77145", but there is no proof that costs other than labor, were taken into consideration in setting the price; and that therefore, on the record before us, the 4.2" for processing taxes paid, was intended and attempted to be included in the selling price, and collected, therefore not shown to be absorbed as claimed; and that the losses caused by the total costs being more than the selling price, were caused not by petitioner's failure to recoup the 4.2" taxes paid from its customers, but by failure to raise the selling price by an amount sufficient to cover other costs, such as raw material, overhead, and selling costs. It is, of course, true that the cost of overhead, selling and material did advance, but that fact alone does not justify a finding that the petitioner did not, in fact, include in its prices, and so recover, the 4.2" expended for tax. Costs, aside from the tax, increased 22.64431". The increase in price, 19.77145", was therefore insufficient to cover the cost increase, exclusive *324 of tax, by 2.87286". In short, petitioner failed to raise its prices enough to cover other costs than the processing tax, and would have had a loss had there been no processing tax - serving to demonstrate that its calculation of cost increases was inefficient or insufficiently calculated. This, we think, is the basic reason for the petitioner's loss, and not failure to require the buyer to absorb the tax. We know that the tax was paid, that it was either billed to the buyer outright, or included in computations of prices; moreover, that sales orders and notes specifically provided for payment of the tax by the buyer; whereas other cost increases than as to labor are not shown to have entered into the sales price calculations. No cost sheet or invoice produced in evidence showed addition of N.R.A. charges, and it was stipulated that the available cloth invoices for 1934 contained no N.R.A. charges, that no invoices produced billed the N.R.A. charges separately, and that available yarn invoices for 1933, 1934, and 1935 also had no separate items for N.R.A. charges. But an exhibit presented as a typical cost sheet used by the petitioner includes the processing tax in the "total cost *325 per yard." In the face of the record before us, we found, and now find, it impossible to regard the operating losses as due to the payment of the tax, and failure to recover from buyers; but on the contrary, in our view, the evidence indicates that failure properly to estimate and include other increased expenses in calculating prices was the cause of losses above sales prices received. The evidence fails to disclose when increases in prices were made, or whether increases in prices were made to cover any specific increase in particular costs, but it is positive and uncontradicted, that the tax was included in cost sheets and billings, at a price even higher than the prescribed 4.2" per pound. As stated in ; affd., (CCA-8), ; certiorari denied, , "The loss may well have been much greater had petitioner not passed on the tax to its customers," as the evidence herein clearly indicates. Furthermore, it reasonably may be inferred that the purported loss in the tax period was in fact lessened because of the tax, since the tax was overstated in the cost sheets which were made for the purpose *326 of determining the selling price and also in certain invoices in which the tax was separately billed at a rate of not less than 6" per pound instead of 4.2" per pound. This company was in receivership and financial difficulties. This would tend to indicate that its credit was impaired. If the manner in which its records were preserved is any criterion, its management was not efficient. Obviously, it was inefficiency not to consider cost increases, other than labor and tax, incident to the new legislation, in setting sales prices. The record before us tends strongly to explain the loss as arising from factors such as just above indicated, rather than absorption of the processing tax. Such absorption is, in our opinion, conspicuously not proved. Logic, in our oponion, does not permit a conclusion, in the light of such a record, that the tax was paid, but absorbed, causing a loss to the petitioner. Certainly the evidence fails to establish affirmatively that the tax paid was absorbed - fails to establish "proof of the actual extent to which the taxpayer shifted to others the burden of the processing tax." In the consideration and reconsideration of this case we have weighed and regarded *327 many matters in finally forming our conclusions. We considered no one of them primarily important, but all contributing to our decision that the petitioner had not produced evidence under the statute. We feel, after long study of this complicated record, that it would require not merely speculation, but speculation contrary to the evidence of record, in order to sustain the petitioner's contention. We may not so proceed. Nor can we believe that there was any impossibility of proof, within the idea that the burden was unconstitutional. , indicates that the petitioner may not be relieved merely because of loss of records, at one time existent. It is only when proof is inherently impossible because, for example, of the nature of business or records, that such contention could be well suggested. ; affd., : "The statute * * * requires evidence of concrete facts. This is not satisfied by proof of difficulty in marshaling the evidence. ." Here, the petitioner actually filed its original claim - for $87,192.17, much less than *328 the present claim - while its records were in existence and at the plant. Mere loss of records, perhaps particularly loss as little explained as here, can not be seen to relieve the petitioner of its burden. Though, as found, there is no evidence of deliberate destruction of records, carelessness is plainly apparent, indeed disregard of duty under the regulations, for no instructions were given to anyone for safekeeping and preservation of books and records when the receiver left Spindale in October 1939. Though the question of unconstitutionality because of impossibility of proof was not mentioned, either on hearing or on briefs, and was by us considered abandoned, it is in a manner suggested since remand. We hold that no such impossibility of proof is shown here. Under section 902(a) of the Revenue Act of 1936 the claimant must show to the satisfaction of the Commissioner, or to the satisfaction of the trial court, that he bore the burden of the amount and has not been relieved therefrom nor reimbursed therefor nor shifted the burden directly or indirectly "(1) through inclusion of such amount by the claimant * * * in the price of any article * * *; (2) through reduction of the *329 price paid for any such commodity; or (3) in any manner whatsoever; * * *." Under the record before us, we find it impossible to be thus satisfied; but on the contrary, we are satisfied that the burden was shifted to the buyer. See (Jan. 20, 1947); . Therefore, after reconsideration in detail of the entire evidence of record and the argument of counsel, we hold that the Commissioner is not shown to have erred in the disallowance of petitioner's claim for refund. We consider it, therefore, unnecessary to consider also the question whether recovery is precluded by failure to preserve records, and failure to apprise the Commissioner of the fact that there had been manufacture of all-rayon cloth. Decision will be entered for the respondent. *
Footnotes
*. The following order was entered by the Tax Court on February 25, 1947: ORDER" "The petitioner having, on December 2, 1946, filed its motion for further findings of fact and for decision, the Court has reexamined the record and carefully considered said motion. Though the facts requested have already been found, except as to the dates of payment, and though ordinarily such dates of payment are set forth in decision, and not in findings of fact, being considered unnecessary and immaterial other than in the decision, it is, nevertheless, "ORDERED: That the motion is sustained to the extent that we find as fact that the taxpayer paid taxes, interest and penalties as follows: During the period from September 29, 1933. until May 21, 1935, the petitioner paid processing taxes on the processing of cotton during the period from August 1, 1933, to February 28, 1935, in the amount of $104,396.41, together with interest and penalty. "In other respects the petitioner's motion for further findings is denied; viz., the requested finding that the petitioner lost more than 7 cents a pound on cotton processed by it in the tax period as compared with its operations in the seven months preceding the tax period, and the requested finding that the petitioner bore the burden of all of the processing taxes, penalties, and interest paid by it in the amount of $105,267.53, except for the sum of $8,668.98 which was billed separately to customers of taxpayer, are denied for lack of proof. For reasons stated in the original opinion, and the opinion pursuant to remand, the Court is not satisfied that the proof establishes the additional facts requested. Though there was proof of various items of processing tax, totaling $8,668.98 being billed separately, there was no proof that such amount was the only amount billed separately, the proof being that such items were the only ones discovered. The incomplete records retained by the petitioner render it impossible to know the total amount of separate billings.↩